JAYS FOODS, INC., a corporation, Plaintiff,

v.

FRITO–LAY, INC., a corporation, Defendant.

No. 78 C 4352.

United States District Court, N.D. of Illinois, E.D.

April 2, 1986.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff has moved pursuant to Rule 54(b) of the Federal Rules of Civil Procedure for reconsideration and vacation of this court's August 1, 1985 order, 614 F.Supp. 1073, granting defendant's motion for summary judgment as to count I.

The August 1, 1985 memorandum and order came after the parties had completed discovery and filed a final pretrial order. The parties briefed the summary judgment issue very thoroughly and well. It was

apparent to the court that both sides had a good grasp of both the applicable law and an extremely large and tangled record. In reaching its decision the court was confident that each position was well supported by strong lawyering.

In its opinion the court dealt with plaintiff's contentions one-by-one. Such an approach was necessitated by the scope of plaintiff's claim and the expansiveness of the record. The court did not, however, forget the nature of plaintiff's case. It understood that plaintiff was not complaining of a series of discrete instances of anticompetitive predatory conduct but rather of a system of unlawful anti-competitive behavior that stretched over many years.

In fact, it was precisely the adoption of plaintiff's approach that prompted the court to conclude that plaintiff, after full discovery, simply did not have enough evidence to create a triable issue on its count I claim. The heart of the court's opinion is an examination of plaintiff's contentions. The court found that the data about defendant's pricing policy was somewhat fragmentary and did not point towards predatory pricing. The non-price evidence was similarly devoid of substantial evidence supporting plaintiff's claim that defendant intentionally designed and implemented an anti-competitive system that included pricing and numerous marketing and sales components, covered a large metropolitan market and lasted for years.

In its motion to reconsider, plaintiff defends a radically scaled-down version of its case. As to the treatment of non-price contentions, plaintiff makes only one direct challenge, alleging that the court did not give weight to evidence that defendant sold below its short-run marginal cost during its potato chip promotions. In its opinion the court noted, however, that the evidence presented by *plaintiff* strongly indicated that defendant did not price below its short-run marginal cost. This data was broken down into four week periods and did not reveal a pattern of pricing below short-run marginal cost that corresponded to promotional periods.

Apparently accepting the court's conclusions about short-run marginal cost, plaintiff also argues that the court improperly rejected a study purporting to establish that defendant priced below its long-run incremental cost. This study is simply a record of defendant's fully-distributed costs of producing potato chips in the zone that included Chicago, with cost of capital figures tacked on. As the court noted in its opinion, this revised study is inherently of questionable accuracy.

The Seventh Circuit has reiterated that pricing below average variable cost is normally one of the most relevant indications of predatory pricing. *MCI Communications Corp. v. American Telephone & Telegraph Co.*, 708 F.2d 1081, 1115 (7th Cir.), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). The evidence which the parties have developed after years of litigating does not support a claim on that basis. In *MCI*, the court adopted a long-run incremental cost approach as a means of defining average total cost because that was the approach adopted by both parties. It made clear, however, that fully distributed costs were not the same as long-run incremental costs and were not normally a proper measure of average total costs to determine predatory pricing, and, further, that long range incremental costs were most appropriately a measure of costs of new products or services, especially when the goods or services were in capital-intensive industries where growth of plant and equipment is marked. *Id.* at 1115–16. One would there expect a rational economic pricing decision to relate more to expectable capital costs and less to imbedded historical costs.

By no stretch of the imagination can the production of potato chips be described as high-tech industry. Potato chips are a conventional consumer food product in a multi-product industry with some continuing capital investment. It is pressing a bit to contend that the pricing of potato chips should be viewed from a standard that essentially equates all costs, including capital costs, as variable. When even that

model rests upon the uncertain foundation of a fully distributed costs analysis, with capital costs merely tacked on, we have moved from the realm of reasonably permissible inferences to the realm of speculation. A brief affidavit filed after the decision in this case saying that isn't necessarily so is not enough to revive plaintiff's claim even were it considered. Pricing decisions which do not reflect substantial capital costs in a new and rapidly expanding market may well be suspect. If pricing decisions in an established market are likewise suspect if they do not recover all costs, including prior capital investment, then pricing above average variable costs would permit a conclusion of predatory pricing. But that is not what the cases hold, nor is such a conclusion consistent with economic reality.

The issue thus becomes whether the earlier reworking by plaintiff of defendant's fully distributed cost analysis should be enough to defeat summary judgment when plaintiff, after full discovery, has otherwise failed to establish even the outlines of an alleged system of anti-competitive conduct. The court believes that granting summary judgment under the circumstances was and is appropriate.

As this court's decision indicated, much of plaintiff's argument rests upon inferences which are at best no more reasonable than contrary inferences and others which are, in many instances, highly attenuated. The statistical data to be presented at trial in many instances provides an uncertain basis for drawing any meaningful conclusion. Discovery has long been closed. The plaintiff has the burden of proof. The mosaic which plaintiff presents, in the context of all the evidence, would leave the jury to speculate that there may have been predatory pricing but without sufficient proof, even after viewing the evidence most favorably to plaintiff, that such a conclusion could reasonably be reached as more likely than not. And that is not sufficient. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

As can be seen, the court's grant of summary judgment is not inconsistent with plaintiff's theory of the case, but rather follows from it. Plaintiff's motion to reconsider and vacate the August 1, 1985 order is accordingly denied.